Good morning, ladies and gentlemen. The Chief Judge greatly, deeply regrets the delay in getting started in this argument, but we understand everyone is ready to go, so we will proceed. This is the argument in Rehearing and Banking, Odom v. Microsoft Corporation. Good morning, Your Honor. My name is Daniel Gerard, and I'm here on behalf of the appellants James Odom and Catherine Moreau Maloney. I'll attempt to reserve 10 minutes if I get to a convenient stopping point, if that's acceptable. My clients are appealing from a dismissal of their claims for violation of Civil RICO subsection C and D without leave to amend. Subsection C makes it unlawful for persons associated with an enterprise to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. And subsection D prohibits conspiracies to violate C. The First Amendment complaint in this case alleged that the enterprise is a joint venture formed by Microsoft and Best Buy to promote each other's products and to jointly market the MSN service. This joint venture was described as a comprehensive strategic alliance with Microsoft investing $200 million in Best Buy pursuant to the terms of the agreement. Nevertheless, the district court apparently concluded, since she dismissed the complaint without leave to amend, that there was no set of facts consistent with those allegations that would qualify this joint venture as a RICO enterprise. It is possible that I do not have the correct copy of the complaint or am looking at the right paragraph. But I thought that the allegation in the complaint was that the agreement, together with the activities of Best Buy and Microsoft, furtherance of the agreement, was an enterprise. Am I misreading it? No. I think that we're alleging that the agreement is the joint venture, so it's a combination of the two companies. There's no mention in here anywhere at all about joint venture. Now, maybe you could amend to say that it's a joint venture, or maybe not. I don't know, but the pleas don't say anything about a joint venture. Well, the enterprise allegations are at paragraph 34, I believe. Which is what I was just summarizing. Right. And whatever the words are on paper, what they intend to say is that this is a combination of two companies that are combining to carry out a complex series of business activities together. You're going way beyond the pleading. Again, that's not a question of what you might be able to allege, but we're here on 12b-6, whether we should be or not. Understood. So the question is, under what authority do you say that an agreement between two people that is then executed is an enterprise? Because the agreement brings those two persons together to carry out business activities. Which has to be true of millions, if not zillions, of relationships that occur daily in this country. Is each and every ordinary contract between two parties a RICO enterprise? No. I think you have to look at the specific business activity that's contemplated pursuant to the contract. But haven't you pled just a simple subsection D, conspiracy, in paragraph 34? You allege it's an agreement, and that is the heart of the D, conspiracy, isn't it? No, because the conspiracy would be the agreement to commit unlawful acts. And in this case, the agreement has nothing inherently sinister about it. It's an agreement of two companies to engage in a range of commercial activity. Well, but you allege in 34 that it is the agreement that is furthered by activities under 1961. And that, to me, reads conspiracy, not enterprise. Well, another way to think of this is if you put yourself in the shoes of the pleading party and you sit down and you read RICO and you look at the definition of enterprise, what does it say? It says that an enterprise includes a corporation and a partnership, as well as an association in fact. And in Tercat, the Supreme Court said these are two distinct things. On one side, you have the statutorily defined enterprises. On another side, you have association in fact enterprises. So how do you plead that a partnership is an enterprise? A joint venture of two companies is a de facto partnership. What more do you need than to be an enterprise for purposes of RICO? What more do you need than to be a partnership? I don't think that there is anything more that you need if you have a partnership, because I think if you apply the literal reading of the definition of an enterprise under section 1961, subsection 4, that a corporation and a partnership are enterprises. So every corporation in the country is an enterprise. That's right. That's exactly right, Your Honor. And every partnership is an enterprise. That's right. And now then the next question is every time two companies have a business relationship to promote something, to sell something, is that necessarily an enterprise? I think it very well can be as long as it's a partnership, if it qualifies as a partnership by definition. Why does it have to qualify as a partnership? What about the end of the list where it talks about those that are in association? If it's an association in fact, then I think you have to look, you have to apply Turkett and the cases decided under Turkett to see whether there's enough binding the people that are the alleged enterprise together such that they're carrying out some economic activity. In Turkett, the Supreme Court was looking for a group of persons engaged together for a common course, a common purpose of engaging in a course of conduct. So if the individual actors are bound together in some way to engage in a common course of conduct, then they are an enterprise. And to respond to the concern that there's something improper about saying that every corporation is a potential enterprise, I think I'd like to say we need to step back and look at what is it that the statute is intended to prohibit.     So if you get in law in a case, but I don't think it's an enterprise because it's not, I can't even say. Well, can I say this, if there's an objection that corporation is not an enterprise, you better go to Congress, because it says enterprise included any individual partnership corporation. I mean there it is. It's in the statute. That's precisely what I'm saying. I don't know if there's a miscommunication. My argument is exactly that, that it's right in the statute. And I'm responding. So are you saying that because as long as you have one corporation involved, that's sufficient to meet the statute or? Yes, that's exactly it. So the fact that these two corporations are working together doesn't matter either. It could have been one corporation. That's true. It wouldn't accurately describe what happened here, because the enterprise is the two corporations coming together to carry out the activity. But that can't be right, that is to say any time you have a corporation involved with somebody else, that that necessarily is enterprise, because it's the last clause of that definition that deals with only one more than one entity, that is to say a group of individuals, individuals including individuals and corporations. I agree with that. And the word you used was involved with someone else when you said two corporations. And so I agree if you say involved with someone else, if you're talking. It has to be under truquette for the purpose of whatever the enterprise is that violates the Commits to Predicate Act. If it's an association in fact enterprise, this is an easier case, though, than a pure association in fact enterprise, because it's a formal joint venture partnership. I'm inclined, I'm going to change the tax on you if I may, to think that we should I think maybe overrule, certainly take a serious departure from Chang and simply agree with the Seventh Circuit and Rogers. And I'll just read to you from Rogers, and the other side may want to respond to this. Finally, this is now the Seventh Circuit and Rogers, and I think it's 96. It would be nonsensical to require proof that an enterprise has purposes or goals separate and apart from the pattern of racketeering activity. We know from truquette that enterprise includes illegal organizations or legal associations in fact that have an exclusively criminal enterprise. As long as you've got one or as long as you have two entities involved for the purpose of doing a predicate act for a bid by RICO, I think that's the end of the game. That's the purpose of enterprise. Now, you may or may not have proved RICO violation, but for the purpose of enterprise, I'm done. Why shouldn't we simply adopt Rogers? I think that's the correct reading. I don't think overruling Chen necessarily. I didn't read Chen so narrowly as it needing to be overruled. What I thought, what I think has happened, and I'll tell you the way I trace the law, is that I think in Chen the contention was that the involvement of a corporation there called George Realty made this a RICO enterprise simply because you had a corporation involved. And the discussion in Chang is, look, George Realty, there's nothing said about this corporation. There's no allegations that describe how this corporation is part of some enterprise that affects interstate commerce in any way. And in the absence of any allegation, and given the fact that the activities of that enterprise were directed by this couple, the Gab Riches, they're called in the case, but they had no control over the corporation, you couldn't hold that corporation as part of the enterprise, because if you're looking at what the statute intends to prohibit, which is the operation of some business in a racketeering way, this corporation just didn't have a connection to that business. And I have a question. It's a tie between the pattern of racketeering activity and the enterprise. And if the evidence shows some sort of relationship, what we call a nexus, that's good enough. I agree. And I think a case like Feldman shows that nexus. And I think what was happening in Chang is that it has to be read as contrasting the role of the corporation in Feldman, where there was the arson ring and the corporations were involved in different ways in the process. And so the Court in Chang is saying there's just nothing in here about how this corporation is part of any enterprise. It's just out there. There's no discussion of it. And where I think things go off track is as part of that discussion, the Court in Chang holds people away from liability or anything like that. Then there's a later case, which is called Metris Direct. And I think that's where things go off track, in my view. And specifically, I don't think the holding in Metris is anything that needs to be revisited. But there's language in that decision where there's specifically a portion of the case, I think, in Metris, where the quotation, what's happening is the Court is saying in that case that the plaintiff has simply alleged that processing activity for credit card transactions is an enterprise. And since we know from Turcotte that there's distinct proof required to show an enterprise on one hand and a pattern of racketeering on the other, what the Court is trying to say, I think, in Metris is that that hasn't been shown since the enterprise is simply the sum of the racketeering acts. And so there's a quotation that a normal credit card transaction between defendant, Citibank, and plaintiff is an action sufficient to satisfy the enterprise requirement. And that's rejected. But then the quotation goes on to say, "...plaintiff has not alleged that defendants and Citibank have established a system of making decisions in furtherance of their alleged criminal activities independent from their respective regular business practices." And I think that's where this separate substructure concept seems to get some traction in the case law, because it's quoted with approval, even though it's not part of the Ninth Circuit's opinion. Are you arguing, counsel, that those cases are at variance with Turcotte? Let me answer that, because that's really the ultimate question. I think that to the extent that the case law is interpreted as creating a requirement that a plaintiff plead a RICO enterprise that involves one structure of actors doing legal things and another substructure of actors doing illegal things, that that's wrong. Because there are several ways you can tell it's wrong. First of all is it would exclude a wholly illegitimate enterprise, which is the exact opposite of the holding of Turcotte. So the law has come full circle to the result that was not countenanced in Turcotte. Nobody's really defending that position, as I understand it. My question is, you keep saying this is a partnership. You don't allege it to be a partnership. It doesn't seem like a partnership in a sense of a partnership of the sort that is an entity governed by partnership statutes. Well, the reason I'm saying that is simply I was told over and over in law school that any time you have an association of two or more persons carrying on an enterprise for profit, it's a partnership, de facto. But they're not – are they carrying out a separate enterprise for profit or are they each carrying out their own enterprise? There's, you know, Microsoft, by the way, has an enterprise, and this guy has an enterprise, and they're each looking out for their own interests and they're entering into an agreement. I think here it's genuinely the former, that it's these two companies combining to carry out a range of activity together. The backdrop here is that Microsoft was perceived as being way behind AOL and they're Best Buy is a company that's in a – I guess what I'm trying to say is in ordinary parlance, this isn't a partnership. There is no separate entity, in fact. I can agree – well, I'm not quite sure that's right, though, because – There's nothing that files tax returns. There's nothing that – It may not file tax returns, but they have joint governance provisions. This was a very, very carefully negotiated joint venture where a lot of lawyers sat down and wrote out how they would operate. Why do you call it a joint venture? Are they going – are they sharing losses as well as gains? I don't think that's a requirement. Joint venture is not mentioned in your pleading. You're correct. The case law, though, if you look at a case like the River City Markets case, for example, the Ninth Circuit upheld what was there simply a combination of two companies coming together to do business. Another case uses the term joint venture, the selectivity. Why do you use the term joint venture? Why don't you go just to the statute and say it's a group of individuals associated, in fact, although not a legal entity? We can say that. And the test that you apply under an association, in fact, partnership should say the same thing. But you didn't say partnership either. Do you have a case that says an agreement and activities and furtherance of an agreement constitute an enterprise? Is there a case that says that? I can't answer that question off the top of my head. I mean, I can – But that's what you said. That's your allegation of an enterprise is an agreement and activities and furtherance of an agreement. Yeah. Well, I think to answer that question directly, yes, I think that's right. I think if you have two companies coming together to carry out business activities – I asked you to get a case that said that those that – that language alone can constitute an enterprise. Well, if you look at the decisions of this circuit in the River City case, River City Markets, Select TV, I don't think – this is much more formally structured activity than the relationship between the companies in those cases. River City Markets is companies that are – it's a broker and a seller of some supermarkets that came together. There was no formal agreement to conduct business together like there was in this case. I think the difficulty is you're trying to say it's a partnership, it's a joint venture. It doesn't seem to meet any of those tests as we would commonly know them. In your pleadings, and the simple agreement in activities and furthers of agreement generally doesn't necessarily constitute a new enterprise. Well, I guess I don't see it as a matter of pleading, not as a matter of what you think you can plead or prove or what this actually was. Well, let's talk about it as a matter of pleading, then. I mean, let's look at it under Chang. Chang adopts Rico-Benni, in effect, the United States versus Rico-Benni decision from the Third Circuit that was decided relatively shortly after Turquette. It approves the three-part test set out in that case, which looks for a structure to make decisions, a continuity rather than ad hoc decision-making, and then proof of an enterprise that's distinct from the pattern of racketeering activity. If you look at what's happening here, you have two companies coming together. They had a formal steering committee, we now know. We didn't know it when we filed the complaint, but they had a formal mechanism for making decisions together. They were carrying out business activity over a period of years, and they had a formal governance mechanism. The facts which you just recited, are they in your first amendment complaint? One fact wasn't, which is we now know that they have they had a formal governance mechanism. The other fact, what's pleaded in the complaint is that they made decisions jointly. And I think it's worth keeping in mind that the pleading standard here is Rule 8a. It's not 9b. For purposes of the enterprise allegations, it's obviously 9b for the allegations that sound in fraud, but what we pled is joint decision-making. That's all we can plead going in. So if you apply the association in fact standard that's enunciated in Chang, which adopts Riccobeni, you conclude this has to be an enterprise. And if it's not, I would submit that the problem is with the test and not with the that it's not a reliable indicator, because if this isn't an enterprise, I don't this is clearly a combination of companies that has enough joint decision-making, enough continuity, and enough separateness from the racketeering acts to qualify as an enterprise. Kagan, would this be an enterprise under Rogers as well? I absolutely think it would. I don't see how you could reach a different conclusion. The other one is the continuity, the structure, the fact that it's separate from the racketeering act. Exactly. And I didn't think it was even close, frankly. I mean, if you think about two companies of this size getting together for this critical in area of business, the notion that a test that's used to screen out ad hoc collections of individuals coming together to commit criminal acts would apply here to exclude this as an enterprise, I think, is very far-fetched when you consider it in the context of what Turkett is saying qualifies as an enterprise. Turkett is saying you need a common course of conduct that's being carried out pursuant to a plan and some structure for making decisions. So we have that. And I think that's the question I started with, because it's not without importance. I mean, for all you can tell from the pleadings, this is a dirty old ordinary contract between two corporate entities. Well, I guess that may well be that every contract is an enterprise. I mean, there's hints of that out there. On the other hand, that doesn't seem to make a great deal of sense. Your Honor. It certainly is not what RICO is all about. So honing in on that question. But allow me to challenge the notion that this is a dirty contract here, because The heart of my question is what makes, in your judgment, based on what you pled, what makes this different from a dirty old ordinary contract case? Well, the fact that what we've pled is you have two large corporations that are coming together, not simply to carry out some single piece of business, that what they're contemplating is economic activity that involves a close interrelationship between the two companies that requires some decision-making structure that's going to take place over a period of years. It has to have continuity. And it can operate completely legitimately, so it's separate from the racketeering activity. And I don't think that that's a hypothetical, but I do think that it's a hypothetical. And I think that's an example from General Motors entering into a dealership arrangement with a San Francisco Cadillac dealer. I don't think if that's the hypothetical, I do, if it meets the other elements of the test enunciated in the Chang case, I think that it does. You have to look at, is it, are these people coming together to carry out economic activity that qualifies in any meaningful sense as an enterprise? If they're selling cars in San Francisco and they have some joint decision-making process or hierarchical decision-making process, and there's continuity and it's separate from the pattern of racketeering activity, if that doesn't qualify, then we have to throw away Chang. We've got to go back beyond Rico-Benny. We've got to go back to Turquette and come up with a whole different test. Okay. I have a slightly different question, and that is, I mean, I'm not quite sure why we're here, except it's lovely to be in San Francisco. But the district court evidently thought you had to have subgroups of legality and another subgroup that was legal as part of the mix in order to be an enterprise. If that were not correct and if it were sent back, then on a summary judgment proceeding, is that not the time when you make all these arguments that you we've been talking about? Well, I think that the ---- Because you just can't tell what the nature of the relationship between these different companies was. Well, I think what's wrong here is that there's a test being applied that the district courts think can be used to throw a case out at the pleading stage that is narrower than the Supreme Court case on point, and that leads to what I submit is an absurd result on its face. Maybe you didn't hear exactly the question I asked. If I were to ---- if I thought, if I thought that the district court got the subgroup thing wrong, that is, apparently the district court believed you had to have a legal subgroup and an illegal subgroup in order to have an enterprise, and if that were incorrect, that means it's reversible under any set of ---- Correct. ---- or any law that you can imagine. It goes back, presumably on summary judgment, the actual relationship between the companies is fleshed out and can be dealt with at that point. I agree with that. There is one other concern, which is that there's a separate pleading element that this ---- the court believes applies, which is this racketeering distribution of proceeds element, which is distinct from the separate substructures element, and that also appears in this Metris Direct case in the same quotation I was reading from earlier, and this is a ---- an embellishment that has cropped up that the district court refers to in its opinion, where it says that you have to plead that the distribution of the racketeering proceeds is happening in some way beyond normal business practice, and if it is just normal business practice, then that's not good enough and you don't qualify as an enterprise. And that is also, I submit, not a permissible pleading requirement under the enterprise definition, because there's no reason why you would think that would be needed. It would exclude a single corporation that's being operated in a wholly illegal way from the definition of an enterprise, since it wouldn't necessarily distribute its proceeds in a wrongful way. So I think both the separate substructures pleading requirement and the ---- I call it the racketeering distribution of proceeds requirement are improper sort of side growths on the law that need to be pruned back, because they don't comport with the decisional law of the Supreme Court and the other decisions of the circuit, and I think they lead to the result that you exclude illegitimate enterprises and you come up with other hypotheticals where the test for an association in fact enterprise leads you to put out from the definition of enterprises combinations of people or corporations that are clearly intended to be encompassed within the definition of an enterprise. I'll suspend here and save approximately 4 minutes and 20 seconds for rebuttal, if that's acceptable, Your Honor. Thank you. Good morning. May it please the Court. I'm Mike Shepherd. I'm here on behalf of Microsoft. Tim Block is here on behalf of Best Buy. It's our hope that we will take 5 minutes of time in case there are issues specific to Best Buy for Mr. Block to address at the end of my comments, and I propose to take the rest. This case should turn on the proposition that organizational nexus is at the heart of the RICO statute, that Congress created added penalties in RICO, very substantial added penalties, because it perceived the added danger created by organizations, organizations that have their own decision-making structures, that direct the affairs of an enterprise. What's the definition of enterprise? We have to be clear about that. We're talking about the definition of the term enterprise, that's all. This was dismissed on the theory that this is not an enterprise. Correct. Now, an enterprise covers every single individual as an enterprise, every corporation, every partnership is an enterprise. They don't have to have a malevolent purpose. They don't have to do anything. So if they just treated one corporation, they would have pled an enterprise. Now, instead, the act says you're also an enterprise if you're a group of individuals associated in fact. Now, isn't that all that's necessary to be an enterprise? No, not after Turcotte, because Turcotte starts defining what an enterprise is, and included in the words in Turcotte are an entity, a continuing unit, and then this Court, in turn, says the enterprise in Turcotte says the enterprise is an entity for present purposes, a group of persons associated together for a common purpose of engaging in a course of conduct. Right. Is that all you need to be an enterprise? Well, you need to be first an entity, a continuing unit, and what does that mean? Well, the statute says you don't need to be an entity, so that can't be right. Well, that's what the Supreme Court said, so I trust their interpretation of the statute. Well, but the Supreme Court counseled do it. It defines entity as a group of persons associated. So you find the definition of entity as the Court is using it in that sentence in the second half of the sentence. But what is an entity? If an entity is anything. Well, it doesn't have to be a legal entity. So it doesn't have to be legal, doesn't have to be illegal, it doesn't have to have a separate substructure for legal, illegal, but it has to be an entity. And what does this mean? Oh, you're saying it does not have to have a separate substructure. In other words, the district court. I don't believe it has to have a separate substructure for legal as opposed to illegal. In other words, the district court got that wrong. The district court got the decision right. There were a number of things that the district court said the complaint was missing and therefore needed to be dismissed. That was only one of them. And I do not defend that rationale. The other rationales I do defend. If we were to adopt the Seventh Circuit's opinion in Rogers as an appropriate understanding of enterprise and fact and of tricket, would you win or would you lose? I don't think Rogers was cited. I do have some familiarity. It was 1996, directly on point, Seventh Circuit. I have some familiarity with it. I think it did have the structure term in it as well, as I recall. And I think the – your question, Your Honor, to Mr. Gerrard, focused on goals apart from the criminal enterprise and that not being a requirement of Rogers. I agree with that. But I think the essence of this is what does it mean after tricket to have an entity, an association in fact enterprise, and the concepts that I articulated at the start of the argument. Breyer, why don't those concepts apply in spades here? You have two ongoing legal entities who have come together in a mutual purpose where they interrelate according to the – even the allegations, whether it's an agreement, which may be a conspiracy as well. But since there's an agreement between these two entities that have agreed to carry out a program, which is – and then that's described – the program is described separately as one to basically misrepresent to consumers. They've got all the characteristics of an ongoing entity. It's a – it's not just an ad hoc group. So what's the flaw here? Well, the test of an entity as set forth in Chang, drawing from Judge Reimer, your opinion as a district court judge in Allington, had these elements of structure to it, again drawn from tricket initially. But what's the structure? I know, but what's the structure that's missing? Then applying that to the allegations of this complaint, the complaint alleges the enterprise in paragraph 34 without any ambiguity as an agreement and acts in association with that agreement. In your opinion, if we overrule Chang, do you lose? I don't think so because I think there are other cases that say the same sort of thing. But, yes, a lot of our argument draws from Chang's attempt to define and describe what it means post-tricket to be an entity, what it means to say, what is it that caused Congress to enact this racketeering statute, impose all kinds of extra penalties, and how do we separate that from any run-of-the-mill agreement, any run-of-the-mill tort involving more than one entity or involving any corporate entity? How do we separate that from the treble damages RICO remedy? What sense can we give to the concept of enterprise? I understand why you want to do that with the statute. But why do you want to do it with the definition of the term enterprise when everything else is an enterprise, every individual, every corporation? We don't read into that all these other requirements. I mean, there must be places in the statute where you can accomplish your purpose of seeing that you have the kind of evil activities or motives or whatever you want. But when we're talking about what an enterprise is, Congress covered everything in the world. Well, I think actually enterprise is the right place, and that Chang was right about that. And the reason I think enterprise is the right place is it's one thing to say a corporation can be an enterprise because a corporation has its decision-making structure in place, and so does an individual. An individual structures his or her own decision. But when you start getting into associations in fact, the question is, what is it about an association in fact that makes it subject to the sort of dangers that Congress was concerned about when it crafted this requirement and centered the statute on the phrase enterprise? But, counsel, we have the Turquette case, which has been mentioned on both sides quite frequently so far. And the very last paragraph of the opinion says the language of the statute reveals that Congress opted for a far broader definition of the word enterprise, and we're unconvinced by anything in legislative history the definition should be given less than its full effect. Isn't that a signal that suggests that we will interpret entity, joint venture, anything in a very broad context? But the question is, how does it stop short of anything? Is the enterprise requirement, does it have no meaning whatsoever? I want you to imagine a continuum. At one side of the continuum is a Walgreens that sells paper, and at the other end of the continuum is FedEx Kinko's. Would you concede that FedEx Kinko's would meet the definition of enterprise? I haven't been in a FedEx Kinko's lately. I assume it's a combination of... Separate corporations that have formed an agreement and they operate together under one roof with a combined name. Would you concede that that's an enterprise? I'm not suggesting they're doing any RICO violations. Would you concede that's an enterprise? Well, I want to look at the allegations of the complaint. Is... So even... But I would expect... Even two corporations that formally get together and merge their name and operate under the same roof, in your mind, would not constitute an enterprise. No, I didn't say that. I said I'd like to look at the allegations. I would expect that lawyers would be able to allege an enterprise out of those circumstances. But I think ultimately, our collective job is, what does the complaint say? What are the allegations? How would you characterize the relationship between these two clients? What is it? The complaint alleges... I'm not asking about the complaint. I want you to tell the in-bank court what it is, in your view. They have an agreement. Is it a joint marketing agreement? Is it... How would you characterize... That may be a fair characterization of it. They have an agreement where they're going to do certain marketing together. And that's in fact. In other words, it's not a legal entity, but it's an association, in fact. No, I think it's an agreement. What makes an association, in fact, is, is there an entity? Is there some structure? Is there something? Well, there's an allegation of the complaint that they made. Microsoft and Best Buy, two really big corporations. Right. That reached an agreement to market things together. And in order to do that, they have to have some way of making decisions about what they're going to do. And they do have such a... And then the complaint says they do it jointly. But jointly, to me, is the opposite of having some sort of structure to have an agreement. Because if all you say is, we agree, you know, decisions are made jointly, what happens if there isn't an agreement? Well, hypothetically, though, because we're talking about, about pleading, if, if the words joint venture had been used in paragraph 34, and it alleged that the joint venture had some structure, that would be enough to satisfy the pleading requirements. Wouldn't you agree? The latter part, if it alleged structure along the lines Chang describes, yes, I think so. And certainly, many joint ventures would have a structure that could be alleged under, under Chang. And if the structure was that, if the structure was that, that it's a 50-50 deal, and, and we, and we each have joint veto power, that wouldn't count? 50-50, we're sharing the profits, and we have veto power. And we're also sharing decision-making, 50-50. And, and there's veto power. That would probably satisfy Chang. It's just, it is not. But, but if, if a legal joint venture had been alleged, in which, of course, those things happen, you share profits, you share management, even if you didn't allege structure, if you're alleging a legal entity joint venture, that's enough. Well, a separate legal entity, I think, inherently has structure. It has to have an ongoing decision-making structure as a separate legal entity. So, yes, if you have a separate legal entity, I think it is, in my mind, likely that you're going to be able to allege a structure under Chang. But we don't have that. We have an agreement. Mr. Shepard, without meaning to cast dispersions on either of these two publicly held companies, how is this any different from what Congress was thinking when it enacted RICO in dealing with agreements between the Genovese and the Gambino crime families to chop up portions of the country for purposes of engaging in Well, that's, I think that's a good question. And the real essence of what Congress was thinking was, when we see things that are organized, that's what the statute was about, when we see things that are organized, that have a structure, that divide up the proceeds, those have an extra danger that goes beyond mere agreements, that goes beyond mere individual criminal conduct, and that's why we want to have a statute that has trouble. What's different from the structure between the illegal crime families on the one hand and the structure that is afforded through the joint marketing agreement between the two legitimate corporations on the other? I think it would be very easy in alleging an enterprise made up of organized crime members to talk about how the decisions are made, the structure of those decisions, the enforcement of those decisions against members, the broken legs, the, et cetera, it would be very easy to allege that, and that's what's different between the allegations that we can all conceive of about the Genovese family and an agreement between two companies. But if the agreement I don't understand that. This is civil RICO. It's not the Gambino family. It's saying you have to have an enterprise, which is a structure, and then you look to the pattern of activity, and the pattern of activity is that between these two entities, they have agreed to utilize their software and their marketing and defraud people, that's the allegation, whether it's true or not, defraud customers into unwittingly winding up getting stuck in a relationship with Microsoft where the burden then shifts to the customer to bail out. Now, that's the activity. Now, if you think that's not breaking legs and whatever, and you wind up attacking it on that ground on the merits, but in terms of alleging what Turcotte seems to want is there's a separate structure, and then there's an activity, and nobody's blending, at least as I see it, just that this is nothing more than two companies coming together to defraud the public. I think you're beyond the allegations, but assuming they had alleged that, the structure has to do the enterprise. The conduct has to be through the enterprise. The enterprise has to be what's directing that activity. And that's what's missing from the allegations, among other things, from the allegations of this complaint. There is the paragraph 10 that talks about the joint marketing agreement. It's, you know, an interesting set of allegations. But when they describe what the enterprise is, in paragraph 34, they talk about an agreement and activities in furtherance of the agreement. Well, that's true, but then they go on to say that in 35, the material decisions guiding the operation of the enterprise are pursuant to this agreement and are made by the defendants jointly. They're made jointly, right. But that, to me, as I was saying before a question came, is the opposite of a decision-making structure. What does that mean? What happens if they don't agree? Well, wait a minute. This is pleading. This is pleading. You know, the question is, they have to know that the, you know, with no discovery, they're supposed to know the exquisite details of dispute resolution? No, they're supposed to be. This is, according to their complaint, a $200 million enterprise. Well, what happens in any partnership if it's a two-person partnership if it doesn't agree? There is some mechanism for dissolving the partnership or for making a dispute resolution by a third party or something. But it's not unusual to have an entity in which there are two people who have equal decision-making authority. Right. But the real question about an entity is what structure does it have? What does that mean? You're going back to this fact that it says jointly, and what happens if they disagree? And that can't be dispositive of anything. But if all you have to do is say jointly, without describing any structure, then what limit is there on everything involving more than one person being a RICO enterprise? What limit is there about anything that would take any tort claim and make it a Federal racketeering claim? The essence of the court is if it isn't going to necessarily meet the racketeering requirements, it's not going to be a pattern, it's not going to be a very good act, et cetera. But that's not the question now. Well, pretty much any, for example, consumer-alleged tort is going to have potentially a pattern. It's going to have a fraud. And so the essence of what Congress was concerned about with RICO was this continuing organization that is more dangerous than just people agreeing. Can't we agree with you on that? The problem I am having is that a structure that is alleged is an ongoing operating business relationship between two companies who are there perpetually, who have the continuity, and have, as corporate entities, have their own internal structures. They've married the two operations, which are to be in the advertising and marketing of this software program. What is the – that's just not an ordinary tort. You've got the elements. I'm trying to figure out. I understand the – I very much understand the concern about being overbroad, the overbreadth of turning any common, you know, get-together into a criminal or a civil damage RICO action. But on the facts of this complaint, I'm having trouble, given the nature of what they've alleged, given the nature of the entities that they've described, and the nature of the agreement with them, why you're picking on this case to make the argument. Well, on the facts, I think, again, Your Honor, you're past the allegations of this complaint. The allegations of this complaint describe the enterprise and structure as an agreement and acts in furtherance of the agreement. There are additional allegations that talk about the joint marketing, but if you parse them closely, they're actually separate from the allegations of the enterprise and they're also separate from the allegations of what actually occurred at Best Buy when people were signed up for the MSN service. Mr. Shipp. It may be that they haven't connected the fraud to the enterprise, but that isn't the question now. The question is, is there an enterprise? Well, I think part of the enterprise analysis is, have they connected the fraud to the enterprise? The fraud has to be the statute of conduct. No, not to have the definition of the enterprise. Conducting the activities through the affairs of the enterprise. So to me, those two aspects are joined. Well, crediting your argument, why do you think an amendment would be futile? Granting leaf to amend would be futile. I mean, it seems to me that on the bare facts, as we've heard them, and people going slightly outside the allegations, they can allege it, what they think is a joint venture. Why would, why in your view would granting leaf to amend have been futile in this case? Well, a couple of reasons. First, they did already amend this complaint. The procedural history is it was first filed here in San Francisco. We filed a form on convenience motion and also a motion to dismiss. The court in San Francisco granted our form on convenience motion, punted the other motion to Seattle. They then amended with our agreement, they amended their complaint. The amendments included a lot, in fact, the bulk of the allegations that we're now talking about as the few allegations they have that, that might satisfy the enterprise requirement. So they've, they've had a shot to amend. After amendment, the district court's discretion according to this Court's decision in Chodos is particularly broad in terms of whether to grant leaf to amend or not. And then we have the history of what happened after. They have filed 24 pages of brief below, 67 pages here in this Court. There was a generous 30-minute argument below, at which point the district court asked what structure besides the contract itself can you point to. And I know, Judge Fletcher, you and I addressed that question and answer in the panel argument, and I think there can probably be different interpretations of the end of the answer, which is we cannot allege that at this point. But whatever interpretation is, there is of those words at the end of the answer. The fact is the judge said, what further structure can you offer, and there is nothing provided. And the notion that we now come finally to have all of you join together en banc and then hear some additional material as that is, that ought to be the way to run the railroad, that obviously it's in your discretion as to whether to, to do that. But to me, it's a futile argument. I mean, history is frustrating and I can appreciate your argument on that, but is it futile? It doesn't seem to be that it would be futile. I'm not saying that we shouldn't, should or shouldn't, but. But the question is really when do you assess futility? And I think in the Ove v. Green case, which I don't think is cited in our brief, but is it 264 F. 3rd, 817, the Court says review is limited to the contents of the complaint. The focus should be what was there in the district court? That gives the, the substance of could you amend or could you not amend? And if you focus it that way and you look at the questions and answers in the district court, there isn't anything. You want, you keep coming back to, and I can understand very well why you do, that the point that if enterprise is not much of an obstacle, then what's to stop this statute from being overly broad? Well, various courts have been sympathetic to that. The only two times that those cases have gone to the Supreme Court was first Turcotte and then Sedema, in which the lower courts of appeal had said, you know, Congress couldn't possibly have meant what they said, and therefore, and twice the Supreme Court, in opinions by Justice White, says that's exactly what they said and that's  And if they want to change the statute, they can do it. Now, it seems to me that your clients are protected, not very much by the word enterprise, but they are protected by the requirement, for example, that there be not only some illegal act, but that there be a pattern of racketeering activity, not a single act, there's got to be a pattern, there's got to be a predicate act and so on, so your client is not left without defense. I confess it's a statute that provides trouble damages in certain circumstances where your client might feel a bit abused, but there it is, it's in the statute. I'm not talking about whether there were racketeering, a pattern of racketeering activities. That's not in front of us. I do not know whether that's true or not. I'm simply talking about enterprise. Right. And I submit, Your Honor, that you've taken the word enterprise out of the statute, that the notion of enterprise, the term in the statute, the entity, the term that is driving the statute, the details that the Court put on that, that this Court put on that in Chang, those all have meaning, there's reason for them to have meaning. Other courts, other circuits, they don't have exactly the same meat they put on the bones, but they have similar meat that they put on the bones, all because the term,  entity, the structure, the enterprise, and courts are working to try to figure out what exactly that means. Well, aren't those issues difficult in circumstances like Turcate and some of the others in which the parts of the asserted enterprise have nothing to do with each other other than the illegal activity? That was the problem that was presented in Turcate. That's not the problem here, though. I mean, here there is an ongoing association of these corporations for completely different reasons. So it seems like a much easier case. There's an agreement. There's an ongoing agreement. Exactly what the ongoing association is and whether it has any structure to it, any entity quality to it, was never in the complaint. There is continuity. There's a joint purpose other than the illegal purpose. There is an alleged structure, whether the ‑‑ which can be fleshed out and then we'll see if it's sufficient or not on summary judgment, but it's alleged to have a structure. What else do you want? What else should be there? The enterprise is not, with all respect, alleged to have a structure in this complaint. But I still don't see how this is different from my analogy to the purely illegal association, in fact, where the profits from the illegal activities in my hypothetical, the narcotics trafficking, is then distributed to each of the two families. And if I take the plaintiff's allegations here, the allegations are that as a result of wire and mail fraud, the profits were then distributed to the two corporations through the joint venture. What more do they need to allege to establish a RICO enterprise under the statute? A structure, and including, and I appreciate your addressing the proceeds point. What Chang said about that was that the enterprise ought to have a structure that directed the distribution of the proceeds. And any organized crime organization is going to have something like that. Counsel, did you want to testify? Okay. Mr. Block informs me that no issues about Best Buy have been raised, and he's willing to let me continue to weave in response to the Court's question. I certainly appreciate that. I'm sorry. I mean, the question of the proceeds. I mean, we're looking at the alleged enterprise, which essentially divided up pursuant, I assume, to the terms of the joint venture agreement. A business that then funneled back to Best Buy and Microsoft through the sale of their goods and services, which is alleged to have been conducted through a pattern of mail and wire fraud. How is that different from the classic illegal association in fact enterprise? Because as Chang required, but is not present here, there's no ongoing structure that deals with the distribution of the proceeds. The only thing about the distribution of proceeds that's alleged in the complaint is that as part of the agreement that the two companies initially reached, there were, you know, there would be a sharing of revenues. Are you really arguing for a heightened pleading requirement in RICO cases? No. None of the cases that I'm familiar with are pleading cases. Well, Chang is a pleading case. Sorry, the Supreme Court. Correct. I don't think the Supreme Court has addressed the pleading issue, but this Court has addressed it I think three times in Chang and Simon and in Waugh. And in the Waugh case, Judge Betty Fletcher's opinion specifically looked at the question raised by the plaintiffs in that case, well, aren't you going beyond 8a and 9b through all these standing orders that require us to allege a whole lot more than we think 8a and 9b of the Federal Rules of Civil Procedure require? And the Court said, yes, you're right, those standing orders are not correct. We shouldn't require people to stick to them, but Chang is still good under 8a and 9b was effectively the holding. Chang gets applied and the complaint gets tossed. And so I'm not asking for any, I don't believe, any heightened pleading requirement. All I'm asking for is something beyond the most barren legal conclusions about what the alleged enterprise, and in this case, there really aren't even legal conclusions about the alleged enterprise. The only legal conclusion, agreement enacts in furtherance of the agreement, on their face do not constitute an enterprise. Are there any further questions? We appear to be at a break. Thank you. Thank you very much. I'll make, I think, three points on reply. First of all, in regards to amendment of the complaint, I won't repeat all the case law interpreting Rule 15 and how leave to amend should be freely granted. I think the operative point is that this complaint was never amended in response to any direction from any court. But are you standing on your complaint now or do you want leave to amend? I'm sorry? Are you standing on your complaint now or are you asking for leave to amend? We are asking that leave to amend be freely granted if this Court finds that it doesn't state a claim for a RICO enterprise. And my belief, reading the case law, is that it does state a claim. And I want to – the second point I wanted to make is specifically responding to the question you asked as to whether an agreement plus the activities in furtherance thereof satisfy the definition of an enterprise. I don't think I intended to stake that out as a position and say you have to rule that that satisfies the definition of an enterprise, and I haven't been able, after thinking about it for a half hour, to think of a case that says precisely that. A couple of thoughts come to mind, though. If you look at the complaint in its entirety, as courts are directed to do at the pleading stage, and you draw all inferences in favor of the pleading party, I think it's fairly read to say that what you have is an agreement bringing two companies together and activity being carried out pursuant to that agreement, that that would satisfy the definition of an association in fact. To the extent that I referred in my argument to a joint venture or a partnership, I hope I didn't pull us astray there, because I think what I was trying to do is to demonstrate that because the statute sets out specific definitions of things that can be enterprises, like corporations and partnerships, that if you apply the association in fact test that the district court applied here, you would end up excluding some of those enumerated things because they don't have the specific substructure in the distribution of proceeds requirement, and that that has to be wrong. Roberts. Counsel, Mr. Shepherd relies pretty heavily on Chang, our Chang case. If we were to follow Chang, what effect would it have on you, or is it your position that we really have to modify or overrule Chang to bring it back closer to Turkey? I think Chang can be applied to uphold this complaint. I think that, as I mentioned earlier, I think Chang adopts the three-part test set out in United States v. Rico-Benni, and if that test is applied and the inferences are drawn in favor of the pleading party, I think this alleged enterprise satisfies the test set out in Chang, where I submit that things go astray, and I don't think it's intended in the opinion itself, but I think it's the quotation in this Metris Direct case that can be read superficially as supporting the notion of some separate substructure that has to be pled that exists alongside the legal structure. You said you can come within Chang, but we're an unbanked court. Do you have a view on whether we should overrule Chang? I do. I think that personally, reading the case law, having spent the time on it, I think that obviously the courts are struggling for some kind of gatekeeping device here. I don't think it's the enterprise requirement. I think that the fact that Congress defined it so broadly, and I think the direction the Court has from Turquette is that the enterprise requirement should be read. There's a Seventh Circuit case called, it's Rogers. There's another one, though, that's specifically, it's Neapolitan, it's called, that endorses a literal and broad reading of the statute. So I think when we do that, I'm happy to answer any other questions or response. I'm sorry, I missed that, Your Honor. They don't appear to be any. Thank you, counsel. Thank you very much. The case just argued is submitted for decision. That concludes the Court's calendar for this session of the Court's staff review. Thank you.
judges: Schroeder, Reinhardt, O'scannlain, Rymer, Hawkins, Thomas, Silverman, W.fletcher, Fisher, Paez, Berzon, Tallman, Rawlinson, Bybee, Bea